LIBERTY TITLE AND TRUST COMPANY, RESPONDENT, v. PRESTON P. SWEETEN, BANKRUPT; E. C. WADDINGTON, TRUSTEE, APPELLANT.

Submitted October 26, 1929—Decided May 19, 1930.

For the appellant, *Frank A. Mathews, Jr.*

For the respondent, *Bleakley, Stockwell & Burling.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This appeal brings up a judgment entered in the Supreme Court, Salem Circuit, tried before Circuit Court Judge Jess, and a jury. Suit was on a promissory note endorsed by Preston P. Sweeten, who later went into bankruptcy, and his trustee, E. C. Waddington, Esquire, was substituted as defendant in this suit as trustee for Preston P. Sweeten, against whom the suit was originally commenced.

The signature of Preston P. Sweeten was not denied and no point was raised against the liability of the original de-

fendant, Preston P. Sweeten, except the contention that notice of dishonor and protest was not given to him as endorser of the note sued on herein; and objection was also made with reference to the admission of certain testimony, and also with respect to the omission to charge certain requests, and error in the charge as delivered.

The motions for nonsuit and for direction of verdict made by counsel for defendant were both denied and the case went to the jury, upon the charge of the court, and the jury found for the plaintiff.

The defendant files twenty-three grounds of appeal and in his brief groups his points under the following heads: (1) admission of improper evidence for plaintiff; (2) failure to nonsuit plaintiff; (3) failure to direct a verdict in favor of defendant; (4) that the trial judge failed to charge certain specific requests of the defendant, and erred in certain respects in the charge as delivered.

There was no error in the court's refusal to nonsuit or to direct a verdict.

The notary, Spielman, testified that he obtained the post office address of Preston P. Sweeten, to which the notice was to be sent, from the officer of the bank who had charge of the note department of the Liberty Title and Trust Company, plaintiff, or from his assistant, naming them. This address was Swedesboro, New Jersey. He also got from Mr. Moosbrugger, the treasurer of the plaintiff bank, instructions to mail a notice to Preston P. Sweeten, to the City Center Building, Philadelphia, Pennsylvania, which was the address of the company and was undoubtedly an address at which the original defendant would get the notice.

Preston P. Sweeten, original defendant, never at any time met the officers of the plaintiff bank and was never in their banking house. The note in question was discounted by his brother, James Sweeten, Jr., who was president of the Sweeten Automobile Company, the maker of the note, and he was also an endorser on it. The proceeds of the note went to Sweeten Automobile Company. James Sweeten, Jr., the president of the automobile company, being a brother of the

original endorser, gave to Harold Lampe, the assistant of the note department of the bank, the address of Preston P. Sweeten, at Swedesboro, New Jersey. The officer of the bank, then, in giving information to the notary public, on request of the latter, gave the Swedesboro address as that of the endorser, in accordance with the information the bank had thus received from the man entrusted by the endorser to transact the business in hand.

Due diligence was shown in the notary public in ascertaining the address of the endorser. See *Second National Bank of Hoboken* v. *Smith,* 91 *N. J. L.* 532, which seems to entirely control the instant case on this head. This court, in that case, said (at *p.* 534) : "Where a notary makes inquiry at the bank where paper is payable, and receives information from the cashier as to the residence of the endorser, upon faith of which the notary addresses the notice of protest, the jury are justified in finding that he has used due diligence." And in that case this court further said, that the notary who made the protest presented the note to the teller of the plaintiff bank, where it was payable, and received word that it was not good, and then inquired of the assistant cashier where the endorser lived and was told that he was dead; that he left a will and gave the name of the executor and his address, to whom the notice was sent; and that was held to be good.

The note sued on was duly protested and notices mailed by the notary making it, on the day of protest. He got the addresses from the person in charge of the note department of the Liberty Trust Company, or his assistant. And that was good and sufficient. And there was evidence to go to the jury that the note in question was duly protested and notice thereof was duly mailed by the notary in accordance with the statute.

The *Negotiable Instruments act (Comp. Stat., p.* 3747, § 108) provides:

"Where a party has added an address to his signature, notice of dishonor must be sent to that address; but if he has not given such address, then the notice must be sent as follows:

"1. Either to the post office where he is accustomed to receive his letters; or

"2. If he live in one place, and have his place of business in another, notice may be sent to either place; or

"3. If he is sojourning in another place, notice may be sent to the place where he is sojourning.

"But where the notice is actually received by the party within the time specified in this act, it will be sufficient, though not sent in accordance with the requirements of this section."

In this case the place given by the endorser's brother as his address could properly be inferred to be any one of the places mentioned in subdivision 1, 2 or 3 of the section of the act quoted.

There was no address of the endorser placed on the note. And as the brother who dealt with the bank and discounted it gave the endorser's address, and as the notice of protest was sent to that address and was never returned undelivered, the jury were entitled to infer that it was mailed and received. That it was received would alone satisfy the statute; but it did not have to be received, for if it were put *en train* for delivery by mail and miscarried, that also would nevertheless be good. The jury, however, had a right to believe that it was received.

It was shown that protest of the note in question, and that of renewals of many others, were sent to the endorser and never returned to the sender, although they had a return address upon them. There was a presumption that the endorser received the notice of protest. He does not deny it in terms; but even if he did, the jury would not have to believe him: whether so or not, the party beneficially interested in the note cannot be held liable for the miscarriage of the mails. See *Second National Bank* v. *Smith, supra* (91 *N. J. L.* 531, at *pp.* 537, 538). See, also, the act above mentioned, § 105, absolving plaintiff from the effect of miscarriage by mail.

Preston P. Sweeten himself testified:

"Q. Did you ever receive any notices of dishonor or protest?

"A. Well, I possibly may have done that, I can't remember; I can't remember that. I may have done that, I may

have received some notices of the due dates of the notes. I may have done that, but I can't remember positively about that."

This is at best but an equivocal declaration.

The motions to nonsuit and direct a verdict were, therefore, properly denied.

We have examined the various matters concerning the alleged improper admission of evidence for the plaintiff and refusal of the learned trial judge to charge certain specific requests of the defendant, and the allegation that he erred in certain respects in the charge as delivered, and find these objections to be without merit.

The result reached is that the judgment under review herein should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal*—None.